Michael J. Aguirre, Esq., SBN 060402
Maria C. Severson, Esq., SBN 173967
**AGUIRRE & SEVERSON, LLP**
501 West Broadway, Suite 1050
San Diego, CA 92101
Telephone: (619) 876-5364
Facsimile: (619) 876-5368
maguirre@amslawyers.com
mseverson@amslawyers.com

Patrick DeBlase (SBN 167138)
Eric Brown (SBN 229622)
Michael C. Eyerly (SBN 178693)
**DEBLASE BROWN EYERLY LLP**
680 South Santa Fe Avenue
Los Angeles, California 90021
Telephone: (310) 575-9955
Facsimile: (310) 575-9919
deblase@dbelegal.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER R. SHORT, HOWARD M. SHORT, GARY CASELLA, ALEC MORROW, FRANK MARTIN, TERESA SCHAPPAUGH, MICHAEL DLUGOS, JANICE ANG, JULIE DREW, JACQUELINE NELSON, TIMOTHY NELSON, TRACY JOBST, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUITY TRUST COMPANY, a South Dakota Corporation; PEDRAM GRANFAR, JONATHAN ADLER, PATRICK GRANFAR, MIKE MALEK, VINCE BOVINO, PIERRE KIM, and Doe Defendants 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) BREACH OF FIDUCIARY DUTY,**<br>**(2) FRAUD,**<br>**(3) VIOLATION OF THE FEDERAL SECURITIES LAWS; and**<br>**(4) UNFAIR COMPETITON**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, for their Complaint against Equity Trust Company, the individually named defendants and Does 1 through 100 (collectively, "Defendants"), hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1332, because there is complete diversity of jurisdiction. Corporate defendant Equity Trust Company is a citizen of the State of South Dakota because it is the state by which Equity Trust Company has been incorporated. Equity Trust Company is also a citizen of the State of Ohio, its principal place of business where the Equity Trust Company's high level officers direct, control, and coordinate the corporation's activities. All plaintiffs are citizens of states other than South Dakota or Ohio, and the amount at stake is more than $75,000. This is a diversity of citizenship case.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves federal questions arising under Sections 10(b) and 20(a) of the Securities & Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).

5. All defendants conduct substantial business in the Central District of California, and significant portions of the damages due to Defendants' misconduct were suffered within the Central District of California.

6. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

# SUMMARY

7. Starting before January 2022, defendants Pedram Granfar, Johnathan Adler and Patrick Granfar, acting under the Oxford Gold Group ("OGG") banner on behalf of defendant Equity Trust Company, carried out a nationwide radio, television, youtube, and social media investment advisor campaign to advise and induce holders of Investment Retirement Trust Accounts (IRA), 401-Ks and other retirement accounts to transfer their accounts to Equity Trust Company on the pretense that Equity Trust Company would hold in trust for plaintiffs gold, silver and other metals investors purchased from OGG.

8. Plaintiffs are informed and believe defendant Equity Trust Company knew, and did not disclose to the investors transferring their account to Equity Trust Company, that substantial and material amounts of precious metal transactions with OGG were not being settled, meaning the investor funds were going unaccounted for by Equity Trust Company in violation of Defendant Equity Trust Company's fiduciary duty to investors.

9. Defendant Equity Trust Company's records show, in material and substantial amounts, that (1) the metals investors purchased from OGG were not being fulfilled and delivered as promised; and/or (2) defendant Equity Trust Company was not receiving the cash proceeds from the precious investors sold to OGG.

10. As a result of defendants' wrongful conduct, investors they induced to transfer their trust account funds to defendant Equity Trust Company, lost money and sustained damages in excess of the jurisdiction limit of the court.

/ / /

/ / /

/ / /

/ / /

/ / /

# THE PARTIES

**Plaintiffs**

11. Plaintiffs Heather R. Short and Howard M. Short are citizens of the State of California, County of San Diego, and the owners of individual retirement accounts who purchased investments at issue in this case.

12. Plaintiff Howard M. Short is a citizen of the State of California, County of San Diego, and the owner of individual retirement accounts who purchased investments at issue in this case.

13. Plaintiff Gary Casella is a citizen of the State of New Jersey, and the owner of individual retirement accounts who purchased investments at issue in this case.

14. Plaintiff Alec Morrow is a citizen of the State of Tennessee, and the owner of individual retirement accounts who purchased investments at issue in this case.

15. Plaintiff Frank Martin is a citizen of the State of Illinois, and the owner of individual retirement accounts who purchased investments at issue in this case.

16. Plaintiff Teresa Schappaugh is a citizen of the State of Illinois, and the owner of individual retirement accounts who purchased investments at issue in this case.

17. Plaintiff Michael Dlugos is a citizen of the State of Arizona, and the owner of individual retirement accounts who purchased investments at issue in this case. He was a citizen of the State of California at the time of the transaction(s).

18. Plaintiff Janice Ang is a citizen of the State of Alaska, and the owner of individual retirement accounts who purchased investments at issue in this case. She was a citizen of the State of California at the time of the transaction(s).

19. Plaintiff Julie Drew is a citizen of the State of Missouri, and the owner of individual retirement accounts who purchased investments at issue in this case.

20. Plaintiff Jacqueline Nelson is a citizen of the State of Wisconsin, and the owner of individual retirement accounts who purchased investments at issue in this case.

21. Plaintiff Timothy Nelson is a citizen of the State of Wisconsin, and the owner of individual retirement accounts who purchased investments at issue in this case.

22. Plaintiff Tracy Jobst is a citizen of the State of Texas, and the owner of individual retirement accounts who purchased investments at issue in this case.

**Defendants**

23. Defendant Equity Trust Company is a corporation organized and existing under the laws of the State of South Dakota with its principal place of business in the State of Ohio at Equity Way, Westlake, Ohio 44145.

24. Defendant Equity Trust Company's principal officers are George Sullivan, Matthew Gardner, Secretary Jeffrey A. Desich, Vice President Richard A. Desich and Elizabeth Jerdonek. Defendant Equity Trust Company's directors (governors) are Loren Koepsell, George Sullivan, Michael A. Dea and Jeffrey A Desich.

25. Equity Trust Company is in the business inducing Investment Retirement Account holders to invest in assets such as precious metals and cryptocurrency.

26. Defendant Pedram Granfar is Oxford Gold Group's (OGG) Chief Executive Officer.

27. Defendant Johnathan Adler is OGG's Chief Financial Officer,

28. Defendant Patrick Granfar is OGC's co-founder and also a CEO.

29. Defendant Mike Malek is a citizen of the State of California, County of Los Angeles. Defendant Malek was a senior account manager at OGG.

30. Defendant Vince Bovino is a citizen of the State of California, County of Los Angeles. Defendant Bovino was an account manager at OGG.

31.   Defendant Pierre Kim is a citizen of the State of California, County of Los Angeles. Defendant Kim was a senior account manager at OGG.

32.   Defendants did not register the investment contracts they sold to plaintiffs with the U.S. Securities & Exchange Commission.  The Granfar, Adler and individually named defendants did not register as investment advisers or as commodity investment advisors.

33.   The true names and capacities of those Defendants sued herein as DOES 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs, who sue those Defendants by such fictitious names. When the DOE parties' true names and capacities and their actual involvement in the matters alleged herein are ascertained, Plaintiffs will amend this complaint to accurately reflect the same.

34.   Plaintiffs are informed and believes, and thereon alleges, that each of the fictitiously named Defendants designated hereunder as a DOE is responsible in some manner for the occurrences alleged herein, and that Plaintiffs' damages as herein alleged were proximately caused or contributed to by their conduct.

35.   Plaintiffs are informed, believes, and thereon alleges that at all relevant times herein, each of the Defendants was the agent, employee, partner, joint venture, alter ego, and/or co-conspirator of one or more of the remaining Defendants and in doing the acts alleged herein, was acting within the purpose, course and scope of such agency, employment joint venture or conspiracy, and with the consent, permission or ratification of one or more remaining Defendants.

36.

## CLASS CLAIMS

37.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who defendants induced to transfer their accounts to defendant Equity Trust Company and who suffered damages defendant Equity Trust Company caused as alleged in this

complaint. The class period is January 2022 to February 2024. Excluded from the Class are Defendants and their families.

38. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Plaintiffs are informed and believe based thereon there are over are over 400 members of the class.

39. Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

40. Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members.

41. The Class(es) meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

42. **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed class members include persons across multiple states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

43. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, it is believed that the Class is comprised of more than 400 members geographically dispersed throughout the United States. Affected class members' names and addresses are available from Equity Trust records, and class members may be notified of the pendency of this action by recognized, court-

approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

44. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include:

(i) Whether Defendants' conduct violates the laws alleged in the claims set forth herein;

(ii) Whether Plaintiffs and members of the Class are entitled to damages, costs, or attorneys' fees from Defendants;

(iii) Whether Plaintiffs and members of the Class are entitled to compensatory damages; and

(iv) Whether Plaintiffs and the Class are entitled to injunctive relief.

45. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and Class members were subjected to the same unlawful conduct and damaged in the same way. Defendants' conduct that gave rise to the claims of Plaintiffs and other Class members is the same for all Class members.

46. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class(es) and are committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

47. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## FACTS

48. In and before January 2022, defendants Equity Trust Company authorized defendants Pedram Granfar, Johnathan Adler and Patrick Granfar to carryout a nationwide radio, television, youtube, and social media investment advisor campaign to advice and induce holders of include Investment Trust Accounts (IRA) 401ks and other retirement account to to transfer their accounts to Equity Trust Company on the pretense that Equity Trust Company would hold in trust gold, silver and other medals investors purchased from OGG.

49. Plaintiffs are informed and believe and thereon allege in response to the advertising campaign Equity Trust Company carried out through the Granfar

and Adler defendants, hundreds of investors from over 27 states including at least the following: California, New Jersey, Texas, Wisconsin, Illinois, Tennessee, Missouri, Arizona, Alaska, Alabama, Connecticut, Florida, Kansas, Nebraska, Louisiana, Colorado, Oklahoma, Delaware, Hawaii Montana, Ohio, Idaho, Michigan, New Mexico, New York, Washington, North Dakota, Pennsylvania, Vermont, Utah, and Virgina switched their account to defendant Equity Trust Company, and those investors transferred millions of dollars to the Equity Trust Company as a result.

50. Plaintiffs are informed and believe that business records generated at defendant Equity Trust Company in connection with the transfer of the millions of dollars from investor accounts showed substantial and material amount of precious metals transactions with OGG were not being settled, meaning the investor funds were going unaccounted for by Equity Trust Company in violation of defendant Equity Trust Company's fiduciary duty to investors.

51. Defendant Equity Trust Company's records show in material and substantial amounts that (i) the metals investors purchased from OGG not being fulfilled and delivered as promised; and/or (ii) defendant Equity Trust Company was not receiving received the cash proceeds from the precious investors sold to OGG.

52. Plaintiffs did not discover their claims until they received a letter, below, in around February 2024, or were informed of the letter after that date.

53. In February 2024, defendant Equity Trust Company partially admitted these actionable facts, but attempted to shift responsibility to investors as shown in the except of the February 7, 2024, letter defendant Equity Trust Company here:

/ / /

/ / /

/ / /

/ / /

9
COMPLAINT

**EQUITY TRUST COMPANY**

February 9, 2024

Heather Ruth Short
13882 Torrey Bella Ct
San Diego, CA 92129

Dear Heather Ruth Short,

We are writing to you because you have one or more self-directed IRA accounts at Equity Trust Company ("Equity Trust"), and our records indicate that you elected to purchase precious metals for your account(s) through Oxford Gold Group, Inc. ("Oxford Gold"), a precious metals dealer, and/or elected to sell precious metals in your account(s) to Oxford Gold.

This letter is to inform you that, as of February 6, 2024, Equity Trust has ceased doing business with Oxford Gold, and we have removed Oxford Gold as your Account Designated Representative/Precious Metals Dealer on your Equity Trust account(s). This does not impact your status as a client of Equity Trust, and unless you direct otherwise, we will continue to serve as the custodian of your account(s).

Further, our records indicate that one or more of your precious metals transactions with Oxford Gold for your Equity Trust account(s) have not been settled. What this means is that our records reflect that (i) the metals you purchased from Oxford Gold were not yet fulfilled and delivered to your designated depository, and/or (ii) that your Equity Trust account(s) has not received the cash proceeds from the precious metals that you sold to Oxford Gold. Please consult your latest quarterly statement(s) for details relating to any unsettled precious metals transactions in your Equity Trust account(s), which can be retrieved by logging into your account at www.myEQUITY.com.

As the client that elected to purchase and/or sell precious metals from Oxford Gold for your account(s), you are responsible for working with your precious metals dealer to ensure those transactions are settled. Please contact Oxford Gold for further information regarding unsettled precious metals transactions. If any of the precious metals that you purchased through Oxford Gold have been settled and not sold back to Oxford Gold, as indicated on your account statement(s), those precious metals will continue to be stored at your elected depository.

If you would like to purchase precious metals in the future or sell any settled precious metals in your account(s), you will need to select a different precious metals dealer, as Equity Trust will no longer process transactions involving Oxford Gold. A list of precious metals dealers that Equity Trust works with can be found at this webpage: https://www.trustetc.com/investmentdistrict/. Please note that this is not an exclusive list, and Equity Trust neither recommends nor advises that its clients work with any particular dealer; clients must conduct their own due diligence when selecting a precious metals dealer to purchase or sell precious metals.

For any questions concerning the status of the assets in your Equity Trust account(s), please review your latest quarterly statement, which can be retrieved by logging into your account at www.myEQUITY.com. If you have questions concerning this letter, please contact us at 855-643-5506.

Thank you for being a valued client.

Equity Trust Company

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10
COMPLAINT

**FIRST CAUSE OF ACTION**
**Breah of Fiduciary Duty**
**(All Defendants)**

54. The plaintiffs allege and incorporate by reference the preceding paragraphs as set forth for herein.

55. Defendants and each of them owed Plaintiffs a duty of trust and confidence based upon the investment advertising campaign defendants designed, authorized or ratified that was intended to and did induce plaintiffs to place their trust and confidence in plaintiffs and each of them.

56. Defendants breached the duty of trust and confidence by failing to keep proper account of the trust funds and precious metals plaintiffs entrusted to defendants.

57. As a direct and proximate result of defendants' breach of fiduciary duties owed plaintiffs, the plaintiffs have suffered damages in an amount according to proof at trial which amount exceeds the jurisdictional limit of this Court.

**SECOND CAUSE OF ACTION**
**Common Law Fraud**
**(All Defendants)**

58. The plaintiffs allege and incorporate by reference the preceding paragraphs as set forth for herein.

59. In defendants' nationwide advertising campaign delivered through television, radio, YouTube, social media and by written brochures represented that plaintiffs' funds and precious metals would be obtained and held in safety in trust.

60. Defendants intentionally omitted the material facts that defendant Equity Company Trust was not employing sufficient and appropriate financial and precious metals controls to, in fact, keep plaintiffs' funds and precious metals in safe and reliable condition.

61.     Plaintiffs reasonably relied on the representations defendants made in the national advertising campaign to their detriment.

62.     As a direct and proximate result of defendants' omission of material facts needed to make those stated not misleading, Plaintiffs have suffered damages according to proof at trial in excess of this Court's jurisdiction limits.

**THIRD CLAIM FOR RELIEF**
**Violations of Section 10(b) of the**
**Exchange Act and Exchange Act Rule 10b-5**

**(Against All Defendants)**

63.     The plaintiffs allege and incorporate by reference the preceding paragraphs as set forth for herein.

64.     As more fully described in the preceding paragraphs above, Defendants, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly, used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. §78j (b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

**FOURTH CLAIM FOR RELIEF**

**Unfair Competition**
**(All Defendants)**

65.     The plaintiffs allege and incorporate by reference the preceding paragraphs as set forth for herein.

66.     Defendants have engaged in and continue to engage in unlawful,

1  unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or
2  misleading advertising that constitutes unfair competition as defined in the Unfair
3  Competition Law, Business and Professions Code section 17200 et seq. 287, and
4  similar provisions of the laws of the States in which Plaintiffs reside.

5   67.   Defendants committed unlawful acts in violation of the Unfair
6  Competition Law by, among other things: Affirmatively promoting the use of fossil
7  fuels while knowing that fossil fuels would lead to devastating consequences on the
8  climate, and affirmatively misleading the public and casting doubt on climate
9  science, thereby creating or assisting in the creation of a public nuisance, as alleged
10 above.

11  68.   Defendants committed unlawful acts in violation of the Unfair
12 Competition Law by, among other things: (a) conducting a nationwide advertising
13 campaign at the behest of defendant Equity Trust Company that induced Plaintiffs
14 to transfer their accounts to Equity Trust Company based on false information that
15 failed to disclose that defendant Equity Trust Company was not maintaining proper
16 and necessary fiduciary controls over the administering and payment of Plaintiffs'
17 funds and precious metals; (b) concealing from Plaintiffs that material and
18 substantial parts of their funds and precious metals held by defendant Equity Trust
19 Company were not existent or were being dissipated.

20  69.   Defendants charged excessive fees for services not rendered, including
21 "storage fees," management fees and commissions.
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

<u>Upon the First, Second, Third Claims For Relief</u>

1. For damages according to proof at trial;
2. For Interest at the legal rate;

<u>Upon the Fourth Claim for Relief</u>

3. For an order enjoining defendants from further disputing plaintiffs funds and requiring defendants to implement control measures to properly keep plaintiffs funds
4. For restitution;
5. For attorneys fees;

<u>Upon All Claims for Relief</u>

6. Reasonable attorney's fees and costs as allowed by law;
7. Costs of suit;
8. Prejudgment interest as allowed by law; and
9. For any other further relief the Court deems just and proper.

AGUIRRE & SEVERSON, LLP

Dated: August 9, 2024

*/s/ Maria C. Severson*
Maria C. Severson
Attorneys for Plaintiffs